### ESTATE OF CLAUS BEVERSON.

No. 4539 — May 7, 1873.

MARRIAGE, EVIDENCE OF.—MERETRICIOUS COHABITATION WITH OR WITHOUT PROMISE OF FUTURE MARRIAGE does not constitute a marriage.

Construing sections, C. C., 57, 68; C. C. P., 1963; affirmed 47 Cal. 621.

*J. B. Hart*, for petitioner.

*C. Bartlett*, for executor.

The petitioner, styling herself Tilly Beverson, claims that she was the wife and is the widow of deceased, that her son Orrin is his child, and that they are entitled to a family allowance.

The petitioner, Delia or Tilly as familiarly called, was married in 1862, at the age of fifteen years, in New York, to one Platt. Three or four months after the marriage Platt

left her, and in 1864 he came to California. She remained in New York until September, 1865, when she also came to this State. Platt was at the steamer when she landed in San Francisco, and she saw him then and occasionally afterwards during the two months next after her arrival. In January, 1866, she became acquainted with Beverson, who was keeping a grocery and liquor store in this city; she at the time conducted the business of dress-making. About two years after her arrival here, they became intimate, under a mutual promise of marriage; but their relations were conducted in such a manner that none knew of them but themselves, and they were known as unmarried people. He visited her and took her to places of amusement. These relations continued until June, 1868, when Beverson left for Europe. In November, 1868, the ceremony of marriage was performed between herself and one Augustus Spencer, she thinking that her husband Platt was dead. In January, 1869, Beverson returned from Europe. Petitioner was then living at Petaluma with Spencer as her husband, and she was known there as Mrs. Spencer. In April, 1869, Beverson visited her and told her that Platt was still alive. She thereupon withdrew from Spencer, returned to this city, and resumed her relations with Beverson. She soon, at the instance of Beverson, instituted proceedings for a divorce from Platt, Beverson paying all expenses, and being a witness in the case, and a divorce was granted Oct. 27, 1869. Her child Orrin was born February 14, 1870. At the instance of Beverson, petitioner took rooms of Mr. and Mrs. Nelson, who kept a grocery store and had rooms over the store.

The petitioner testified in substance as follows:

"While living at Mrs. Nelson's I was engaged to be married to Beverson. Soon after the divorce from Platt he promised to marry me; we were to be married before the birth of the child; it was born before the time, and so we did not get married, and then we were to be married when I was well enough to do so. He took rooms at Mrs. Kruger's, and introduced me as Mrs. Beverson. The agreement to marry was broken off, and I went to Third street. I was to be married a week after we left Mrs. Kruger's. Went to

Third street as Mrs. Beverson. The child was his; he recognized it as his; he had it on the street in a buggy a week after we went to Third street. We lived on Third street three weeks. Decedent and I dissolved because he did not marry me as he promised. I thought I was not his wife because there was no ceremony said before a priest, preacher or justice of the peace, so I left. I did not wish to live with him without a ceremony, and I did not want to raise my child and others as bastards. Decedent rented the house on Third street; I bought furniture and he paid for it. We had a quarrel at the time we separated; I went to Washington Territory and I never again saw decedent alive."

Mrs. Nelson testified that petitioner came to her house as Mrs. Spencer; hired rooms. Beverson was a particular friend of my husband. He came sometimes to visit her. I heard him tell her that he was going to be married to her. He spoke of our children and said we could have a christening and wedding together. When she came to my house, Oct., 1869, she came as Mrs. Spencer; she said she would not live with her husband; that Beverson had promised to marry her, and she would live with him.

Mrs. Kruger testified that the petitioner, Mrs. Spencer, lived at her house January, February and March, 1870; the child was born there Feb. 14, 1870; Beverson came there to see her; she was Mrs. Beverson during the three months; they were going to be married before the child was born; also after its birth; I heard them talking that they were going to get married; they were always talking about it. He did not say much to me about the child; he was there at its birth; took care of it; took care of it nights; did things for it. Before the child was born she said she was going to marry Beverson. I knew Mrs. Spencer in New York, eleven or twelve years before. I saw her once in a while. Saw her and decedent at a dancing party some years ago.

The petitioner, in the fall of 1871, representing herself to be the widow of Spencer, obtained $60 aid from a Masonic Lodge of which Spencer had been a member. She nursed Spencer in May, 1871, in his last sickness; lived with him and occupied the same room with him; the child

passed as Spencer's child; it called him father, and he called it his. He died in May, 1871, and she attended his funeral as his widow. After his death she visited Washington Territory as Mrs. Spencer. After Beverson died she returned to this city and went and now goes as Mrs. Spencer, and the child as Orrin Spencer.

Petitioner claims that the above facts show an actual though not ceremonial marriage between herself and Beverson.

By the COURT: The facts in this case do not display an actual marriage. Their relations were meretricious from beginning to end. At best, it was a cohabitation with a promise to marry at *some* time; not a present agreement of marriage. The petition is dismissed.